**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JOHN SACCHI,<br>Individually and on behalf of all others similarly situated,<br><br>Plaintiffs (collectively, "**Consumers**"),<br>vs.<br><br>WeBULL FINANCIAL LLC,<br>and<br>DOES 1 through 10, inclusive,<br><br>Defendants (collectively, "**Company**"). | : | **ELECTRONICALLY FILED**<br><br>Hon. ___________<br><br>No. 26-cv-8973-___<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**RECIDIVIST WeBULL**
**FRAUDULENTLY SOLICITS**
**MONIES AND ACCOUNT TRANSFERS**
**TO WEBULL, REFUSES *EVEN AN EXPLANATION***
**WHEN PRE-LITIGATION REQUESTS ARE MADE, AND**
**INSTEAD *SIMPLY PROCEEDS TO "DE-BANK" THE CONSUMER***
***IN ABJECT VIOLATION OF PRESIDENTIAL EXECUTIVE ORDER 14331*[1]**

Plaintiff John Sacchi ("**Mr. Sacchi**," "**Consumer**," "**Consumers**," "**Plaintiff**," or "**Plaintiffs**"), Individually and on behalf of all others similarly situated, hereby alleges as follows:

1. Recidivist WeBull fraudulently solicits, *inter alia*, monies and retirement account transfers to WeBull by promising 3.5% bonus payments, refuses *even an explanation*

[1] "Guaranteeing Fair Banking For All Americans," Pres. Exec. Ord. 14331, 90 Fed. Reg. 38925 (Aug. 7, 2025).

when pre-litigation requests are made for unpaid bonuses, and instead *simply proceeds to "de-bank" the consumer for the "lawful business activity" of <u>merely requesting the owed compensation</u> in abject violation of Presidential Executive Order 14331.*[2]

2. WeBull has given Mr. Sacchi only 7 more days after today to liquidate his account, which will effectively destroy Mr. Sacchi's retirement plans as he is a 77-year-old stroke victim whose only guaranteed source of income consists of monthly Social Security payments and whose quarter-of-a-million dollar WeBull retirement account contains time-constrained investments and will become taxable immediately upon their consummated expulsion from WeBull's custody; significantly, WeBull's threatened conduct may be enjoined and those horrific consequences avoided if the instant action succeeds and a TRO granted.

3. WeBull not only immediately "de-banked" Mr. Sacchi, but WeBull simultaneously banned Mr. Sacchi from telephone communication with WeBull, purported to bar Mr. Sacchi's attorney from contacting WeBull directly to resolve the threatened "de-banking," and provided absolutely no explanation as to how WeBull possibly could have lawfully withheld Mr. Sacchi's 3.5% BONUS and then

[2] "Guaranteeing Fair Banking For All Americans," Pres. Exec. Ord. 14331, 90 Fed. Reg. 38925 (Aug. 7, 2025).

"de-banked" him in retaliation simply because he asked for an explanation.

4. Mr. Sacchi, consequently, had no option than to initiate the instant action to pursue a remedy against WeBull for WeBull's egregious fraudulent conduct, non-payment of the 3.5% bonus, and "de-banking" that retaliated against Mr. Sacchi simply for requesting if any meritorious basis existed for WeBull's egregious and most assuredly illegal activities prior to commencing litigation.

5. Defendant WeBull Financial LLC (**"WeBull"**) is a corporation that, *inter alia*, maintains investment and retirement accounts of individuals nationwide and maintains its primary marketing, processing, technology, contracting, and customer service operations in the Borough of Manhattan at 44 Wall Street, which serves as it registered site with regulators including the federal Financial Industry Regulatory Authority.

6. WeBull, along with the Doe defendants, are collectively referred to here throughout interchangeably as **"WeBull,"** **"Defendant,"** **"Defendants,"** or **"Company."**

7. Plaintiffs bring this action to challenge the Company's ongoing knowing and systematic practice in fraudulently inducing consumers to transfer monies and retirement accounts to WeBull's custody by promising

consumers, *inter alia*, a three and one-half percent (3.5%) bonus ("**3.5% BONUS**") of the transferred amount while intending to not ultimately pay the full 3.5% BONUS and then incredibly proceeding to simply and unlawfully "de-bank" consumers who request any purported rationale for the failure to pay the 3.5% BONUS in abject violation of, *inter alia*, Presidential Executive Order 14331, which prohibits financial institutions from terminating relationships with customers based on lawful business activities such as requesting compensation when owed money by the financial institution that is ***managing the customers' lifetime retirement savings***. See "Guaranteeing Fair Banking For All Americans," Pres. Exec. Ord. 14331, 90 Fed. Reg. 38925 (Aug. 7, 2025).

8. To the date of this filing, multiple WeBull agents ***and lawyers*** have inexplicably and continually refused to provide any explanation as to why WeBull failed to pay the 3.5% BONUS that appears without question to be contractually owed to plaintiff John Sacchi ("**Consumer,**" "**Plaintiff,**" or "**Mr. Sacchi**"), who was solicited to transfer significant amounts of investment and retirement monies to WeBull in New Jersey in 2024 as his lifetime retirement savings.

9. Mr. Sacchi was forced to obtain an attorney in his attempt for justice on his individual case in the Special Civil Part of the Superior Court of New Jersey (the Complaint, dated August 6, 2026, filed in that limited-jurisdiction court is attached hereto as **Exhibit A**), but WeBull committed additional egregious violations of the New Jersey Consumer Fraud Act by continuing to refuse payment and failing even to offer any purported lawful basis pursuant to which WeBull failed to pay the 3.5% BONUS.[3]

10. WeBull's refusal to proffer any explanation as to why it may be permitted to withhold the 3.5% BONUS continued despite Mr. Sacchi's repeated requests for an explanation in order that the instant action may be obviated. Mr. Sacchi sought to avoid possible unnecessary invocation of the Court's jurisdiction by plainly advising that he was:

> providing WeBull the courtesy of an inquiry pre-filing to ascertain whether WeBull purports to have any substantive basis for lawfully withholding the bonus payment. . . . If WeBull does purport to have a substantive defense, kindly advise so that [] I have an opportunity to refrain from re-filing in the unlikely event you somehow present a veritable ironclad defense, which seems impossible--***but always better to raise it now rather than invoke a Court's jurisdiction to simply communicate***. . . . If I do not hear back from you by Monday, I will re-file as indicated and attach

[3]See *infra* note 4.

> this pre-filing inquiry to the Complaint as yet another instance of WeBull's violating the NJ Consumer Fraud Act by deliberately refusing to respond to repeated consumer requests in the absence of active litigation. ***Perhaps that posture proves more efficient in the end for WeBull as many consumers lack the wherewithal to commence formal legal action, but that is not the case here.***
>
> Again, if I do not hear back, I will proceed to re-file as indicated and attach this unanswered pre-filing inquiry . . . .
>
> Hope to hear back from you. Thank you.

Electronic mail message from Mr. Sacchi to WeBull, Oct. 9, 2026, at 1 (second emphasis added).

11. WeBull curtly stated, "If Mr. Sacchi believes his position has merit, ***he is free to pursue it in FINRA Arbitration***," with **<u>its attendant expense, effort, and time</u>**.[4] Electronic-mail message from WeBull to Mr. Sacchi, Oct. 9, 2026, at 1 (emphasis added).

12. WeBull deliberately refuses to respond to repeated consumer requests in the absence of active litigation. That posture apparently proves more efficient economically and administratively in the end for WeBull as many individual consumers, retirees, and Senior Citizens of course lack the wherewithal to commence formal legal action such as FINRA Arbitration and simply suffer the

[4]While WeBull sought to dismiss Mr. Sacchi's Special Civil Part action in New Jersey Superior Court pursuant to a purported applicable mandated-arbitration provision, that provision, even if, *arguendo*, applicable, specifically exempts putative and certified class actions including the instant filing.

consequences of WeBull's silence unless formal legal action on a class basis is pursued.

## WeBULL RETALIATED AGAINST CONSUMER BY "DE-BANKING" HIM IN ABJECT VIOLATION OF PRESIDENTIAL EXECUTIVE ORDER 14331

13. WeBull continued not to provide any purported basis for withholding the 3.5% BONUS and instead simply advised Mr. Sacchi that WeBull had "effective immediately" ***terminated its relationship with him and stated his retirement account would be liquidated in seven days from this filing, which liquidation would,*** *inter alia*, effectively destroy Mr. Sacchi's retirement plans as he is a 77-year-old stroke victim whose quarter-of-a-million dollar lifetime retirement account contains time-constrained investments and will become taxable immediately upon its consummated expulsion from WeBull's custody; significantly, WeBull's threatened conduct may be enjoined if the instant action were to succeed and a temporary restraining order and permanent injunction granted.

## WeBULL'S RECIDIVIST FRAUDULENT CONDUCT

14. Compounding WeBull's truly outrageous conduct in its effort to avoid justice for failing to pay the 3.5% BONUS is the fact that WeBull had ***already*** faced similar claims earlier this year in litigation that ended—-according to the public docket—-in a confidential settlement.

15. All of the claims asserted herein arise out of Company's activity in Manhattan[5] and are a common fact pattern as to each member of the Class defined below.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. section 1332(d)(2) in that the matter in controversy of all class members' claims together aggregate more than $5,000,000, exclusive of costs and non-breach interest, the number of class members exceeds one hundred, and Consumer resides outside New York.

17. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. section 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims referenced herein occurred in and/or were targeted to cause damages in this District where WeBull maintains its primary marketing, processing, technology, contracting, and customer service operations for consumers'

[5]WeBull maintains investment and retirement accounts of individuals nationwide, and maintains its primary marketing, processing, technology, contracting, and customer service operations for those investment and retirement accounts in the Borough of Manhattan at 44 Wall Street, which serves as it registered site with regulators including the federal Financial Industry Regulatory Authority. Plaintiff therefore commences this action in Manhattan, where a nationwide class action can be maintained due to the circumstance that WeBull's actionable activity that injures consumers nationwide all occurs here.

investment and retirement accounts, which serves as it registered site with regulators including the federal Financial Industry Regulatory Authority. Manhattan is where WeBull, *inter alia*, fraudulently solicits transfers of monies and accounts to WeBull and then refuses to pay the promised promotions. See *supra* note 4. This Court also has jurisdiction over WeBull in this action because WeBull markets its investment and retirement accounts to New York residents.

## OTHER PARTIES

18. Plaintiff ("**Consumers**" or "**Plaintiffs**") is a 77-year-old male who is a victim of a cerebral vascular accident (commonly referred to as a "stroke") and was solicited by WeBull to transfer money and retirement accounts to WeBull in reliance on the promise of, *inter alia*, the 3.5% BONUS.

19. Except as described herein, Plaintiffs are ignorant of the true names of Defendants sued as Does 1 through 10, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names. Plaintiffs will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

20. At all times herein mentioned, WeBull, and/or the Doe Defendants, and each of them, were an agent or joint venturer of each of the other, and in doing the acts

alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

21. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

22. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

## **FACTUAL ALLEGATIONS**

23. Plaintiff was solicited by Company in or about 2024 to transfer money and retirement accounts to WeBull in reliance upon the Company's promises, *inter alia*, to provide the 3.5% BONUS on the transferred amount as long as

the account level remained at a minimum amount for a specified time period.

24. Plaintiff relied on Company's promises by transferring money and retirement accounts to WeBull and maintained the account level at the minimum amount for the specified time period.

25. Company failed to pay the full 3.5% BONUS.

26. Company failed to provide the 3.5% BONUS despite Plaintiff's multiple ***pre-litigation requests*** in writing.

**CLASS ALLEGATIONS**

27. Consumer brings all his Causes of Action on his own behalf and on behalf of the Class pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the Rule. The Class is defined as follows:

> All individuals nationwide who, commencing six years before the filing of this action, transferred monies and/or retirement accounts to one or more WeBull accounts that offered a specified promotion, e.g. 2% Bonus, 1% Bonus, 3.5% BONUS, and have maintained, or intend to maintain, the subject account(s) at the minimum level for the respective requisite time period. Excluded from the Class are: (1) employees of the Defendants, including their officers or directors; (2) Defendants' affiliates, subsidiaries, or co-conspirators; and (3) the Court to which this case is assigned.

28. Plaintiff does not know the exact number of Class members because such information is in the exclusive control of the Defendants. However, Plaintiff believes that due to the nature of the trade and commerce involved and the identical language utilized in Company's promotions, Class members are sufficiently numerous, most likely many thousands of consumers, such that joinder of all Class members is impracticable. The information as to the identity of the Class members can be readily determined from records maintained by Company, because all investment and retirement account information is recorded in Company's written and electronic records.

29. Plaintiff's claims are typical of, and not antagonistic to, the claims of the other Class members because Plaintiff was injured by Defendants' practices and by asserting his claims, Plaintiff will also advance the claims of all members of the Class who were damaged by the same wrongful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

30. The common legal and factual questions which do not vary from Class member to Class member, and which may be determined without reference to individual circumstances of any Class member, include, but are not limited to, the following:

a. Did Company fraudulently solicit the transfer of money and retirement accounts to WeBull by promising a promotion that it intended not to completely provide?

b. What is the appropriate measure of damages for Company's wrongful conduct?

c. Was Company's policy deliberate such that punitive damages may be awarded? and

d. Are Plaintiff and the Class Members entitled to the injunctive and equitable relief requested herein to enjoin Company's continuing wrongful action?

31. These common questions and others predominate over questions, if any, that affect only individual members of the Class.

32. The claims of the representative Plaintiff are typical of the claims of the Class. Plaintiff and counsel will fairly and adequately represent the interests of the Class.

33. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome on the courts if individual litigation of numerous cases would proceed. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this

Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

34. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

35. Injunctive relief is appropriate as to the Class as a whole because Defendants have acted or refused to act on grounds generally applicable to the Class.

27. Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including, but not limited to, providing Class members with a method for the redress of claims that may otherwise not warrant individual litigation: Individual consumers typically lack the resources, ability, and knowledge to legally pursue their respective remedy of a rightful refund and WeBull demonstrated in, *inter alia*, the preceding individual action in New Jersey state court and pre-litigation conduct detailed herein that it will not discuss claims—-nor even respond--unless brought on a class basis due to the relatively small amount involved in individual actions.

## FIRST CAUSE OF ACTION
## (FRAUD)

36. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

37. Company knowingly and deliberately fraudulently solicited the transfer of money and retirement accounts to WeBull by promising a promotion that it intended not to completely provide.

38. Plaintiff relied on Company's promise by transferring money and retirement accounts to WeBull.

39. Company failed to provide Plaintiff the promised promotion.

40. ***Company's wrongful behavior continues to the present*** as it continues fraudulently promising, *inter alia*, the 3.5% BONUS that it does not intend to fully pay and continues not paying the 3.5% BONUS despite maintenance of the subject accounts at the required minimum level for the respective requisite time period.

41. Plaintiff has been damaged thereby.

## SECOND CAUSE OF ACTION
## (VIOLATION OF N.Y. GEN. BUS. LAW § 349: DECEPTIVE ACTS AND PRACTICES)

42. Consumer repeats and realleges each and every allegation set forth above as if fully set forth herein.

43. Company knowingly and deliberately fraudulently solicited the transfer of money and retirement accounts to

WeBull by promising a promotion that it intended not to completely provide.

44. Plaintiff relied on Company's promise by transferring money and retirement accounts to WeBull.

45. Company failed to provide Plaintiff the promised promotion and refused to provide any explanation as to why such failure could possibly be lawful.

46. When Consumer repeated his demand for compensation and an explanation for the non-payment, Company then incredibly proceeded to simply and unlawfully "de-bank" Consumer in abject violation of, *inter alia*, Presidential Executive Order 14331, which prohibits financial institutions from terminating relationships with customers based on lawful activities such as requesting compensation and an explanation for non-payment when owed money by the financial institution. See "Guaranteeing Fair Banking For All Americans," Pres. Exec. Ord. 14331, 90 Fed. Reg. 38925 (Aug. 7, 2025).

47. Plaintiff has been damaged thereby.

48. Statute provides for payment of a minimum of $50.00 per violation and up to three times actual damages per violation.

49. Statute provides for award of attorneys' fees.

50. Consumer also seeks injunctive relief requiring Company to cease its fraudulent solicitation practices and cease terminating financial services to customers who

requested compensation and an explanation for non-payment thereof.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF N.Y. GEN. BUS. LAW § 350: FALSE ADVERTISING)**

51. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

52. Statute provides for payment of minimum of five hundred dollars ($500.00) for each violation of the false advertising statute and up to three times actual damages.

53. Statute provides for award of attorneys' fees.

54. Consumer also seeks injunctive relief requiring Company to cease its systematic and fraudulent solicitation and unlawful "de-banking" practices.

**FOURTH CAUSE OF ACTION**
**(BREACH OF CONTRACT)**

55. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

56. As a result of Company's breach of the agreement to pay the complete 3.5% BONUS, Plaintiff suffered damages by not receiving money to which he was, and remains, legally entitled.

**FIFTH CAUSE OF ACTION**
**(BREACH OF CONTRACTUAL DUTY OF GOOD FAITH AND FAIR DEALING)**

57. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

58. As a result of Company's failure to provide the complete 3.5% BONUS, refusing to provide an explanation, and then terminating its financial services to Consumer simply for engaging in the lawful business activity of seeking compensation owed to Consumer, Plaintiff suffered damages by not receiving money to which he was, and remains, legally entitled and having his financial services terminated that caused financial harm by, *inter alia*, abruptly liquidating his time-constrained investments and subjecting them to immediate taxation.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

**PRAYER FOR RELIEF**

1. Certification of the proposed Class and notice and claims administration to be paid by Defendants;

2. Statutory damages;

3. Compensatory, general, incidental, and consequential damages according to proof;

4. Special damages according to proof;

5. Punitive damages to punish Defendants for their willful illegal and deliberate contract breaches--***particularly in light of their recent settlement of similar allegations as suggested by the public docket***--and to deter

others who may otherwise engage in similar willful illegal and deliberate conduct;

6. Restitution and disgorgement according to proof;

7. Injunctive relief against Defendants, and each of them, to prevent future wrongful fraudulent solicitation, contract breaches, and wrongful termination of WeBull financial institution services in retaliation against Consumers for seeking owed compensation and an explanation why WeBull refuses to pay it;

8. Prejudgment interest at the maximum legal rate;

9. Costs of the proceedings herein;

10. Reasonable attorneys' fees; and

11. All such other and further relief as the Court deems just and proper, the total of which, less interest and costs, will be greater than $5,000,000.00.

Dated: Oct. 11, 2026

Respectfully submitted,

By: __/s/_Stephen J. Simoni__
STEPHEN J. SIMONI
StephenSimoniLAW@gmail.com
**SIMONI CONSUMERS CLASS ACTION LAW OFFICES**
c/o Jardim Meisner Salmon Sprague & Susser, P.C.
30B Vreeland Road, Ste. 100
Florham Park, NJ 07932
Telephone: (917) 621-5795

*Counsel for Plaintiff and the Proposed Class*

**DEMAND FOR JURY TRIAL**

Plaintiffs on behalf of themselves and all others similarly situated hereby request a jury trial on all claims so triable.

Dated: Oct. 11, 2026 Respectfully submitted,

By: __/s/_Stephen J. Simoni__